2015 COA 154

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Erin A. PENDLETON, Defendant–Appellant.**

Court of Appeals No. 13CA1617

Colorado Court of Appeals, Div. IV.

Announced October 22, 2015

510

Cynthia H. Coffman, Attorney General, Rebecca L. Williams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Noble Law Firm, LLC, Antony Noble, Ruchi Kapoor, Lakewood, Colorado, for Defendant–Appellant.

Opinion by JUDGE GRAHAM

¶ 1 Defendant, Erin A. Pendleton, appeals the postconviction court's order denying her motion for postconviction relief under Crim. P. 35(c). We affirm.

## I. Background

¶ 2 In June of 2004, defendant gave birth in a public restroom and discarded her newborn son in the trash, where he was later found dead.

¶ 3 Defendant was charged with first degree murder[1] and child abuse resulting in death.[2] With the help of her attorneys, she negotiated a plea agreement with the prosecution. In exchange for her plea to the child abuse charge, the prosecution dismissed the murder charge and agreed to a sentencing range of between sixteen and forty years in prison (eight years less than the maximum authorized by statute). The trial court accepted the agreement and sentenced defendant to a term of forty years in prison.

¶ 4 Almost three years later, defendant filed a motion for postconviction relief under Crim. P. 35(c), in which she sought to withdraw her plea for a variety of reasons. After a ten-day hearing, the postconviction court denied her request.

¶ 5 On appeal, defendant claims the postconviction court erred when it denied her motion for postconviction relief. Specifically, she argues the court erred when it (1) retrospectively determined she was competent when she entered her guilty plea; (2) concluded she entered the plea knowingly, voluntarily, and intelligently; and (3) rejected her claim that the attorney who represented her was ineffective. We address these arguments in turn.

## II. Crim. P. 35(c)

¶ 6 Every person convicted of a crime is entitled to apply for postconviction relief on grounds that the conviction was obtained, or the sentence was imposed, in violation of the Constitution or laws of the United States or Colorado. Crim. P. 35(c)(2)(I). A judgment of conviction is presumed valid. *People v. Simpson*, 69 P.3d 79, 80 (Colo.2003). It is therefore a defendant's burden to show, by a preponderance of the evidence, that her conviction was invalid. *Id.*

¶ 7 Where, as here, the postconviction court denies a motion for postconviction relief after conducting a hearing, we review its legal conclusions de novo, but defer to its findings of fact if the record supports them. *People v. Corson*, 2013 COA 4, ¶ 14, 338 P.3d 333 (*cert. granted* Nov. 12, 2013); *see People v. McKimmy*, 2014 CO 76, ¶ 19, 338 P.3d 333. We also defer to the court's determinations regarding the weight of the evidence and the credibility of the witnesses who testify at the hearing. *People v. Curren*, 228 P.3d 253, 258 (Colo.App.2009).

---

1. A class 1 felony, §§ 18–3–102(1)(f), (3), C.R.S. 2015, which carries a mandatory sentence of life imprisonment without parole, *see* § 18–1.3–401(1)(a)(V)(A), C.R.S.2015.

2. A class 2 felony, §§ 18–6–401(1)(a), (7)(a)(I), C.R.S.2015, which carries a mandatory sentence of between sixteen and forty-eight years in prison, *see* §§ 18–1.3–401(1)(a)(V)(A), (8)(d).

### III. Retrospective Competency Determination

¶ 8 Defendant first claims the post-conviction court erred when it retrospectively determined that she was competent at the time she entered her guilty plea. We disagree.

¶ 9 Initially, we address how the post-conviction court was presented with and considered the issue of competency. The postconviction court dealt with the issue of defendant's competency in connection with its consideration of her claims that she did not make a knowing, voluntary, and intelligent plea because she was incompetent, and her counsel was ineffective because he failed to pursue a competency determination.[3] To resolve these claims, the post-conviction court was required to consider defendant's competency or, at minimum, determine the probable result of a competency hearing. We therefore agree with the postconviction court that the nature of defendant's claims required it to determine whether she was competent at the time of her plea. *See generally People v. Karpierz,* 165 P.3d 753 (Colo.App.2006) (involving a retrospective competency determination under similar circumstances).

### A. Standard of Review and Relevant Law

¶ 10 Competency is a question of fact. *People in Interest of W.P.,* 2013 CO 11, ¶ 10, 295 P.3d 514. We therefore review the postconviction court's competency determination for abuse of discretion. *Id.* A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, *People v. Hoskins,* 2014 CO 70, ¶ 17, 333 P.3d 828; when it misapplies the law, *People v. Henson,* 2013 COA 36, ¶ 9, 307 P.3d 1135; or when there is no evidence in the record to support it, *People v. Muckle,* 107 P.3d 380, 383 (Colo. 2005).

¶ 11 Although retrospective competency determinations are not favored, they are permitted whenever the record, together with any additional evidence available, allows the court to make an accurate assessment of the defendant's competency. *See People v. Corichi,* 18 P.3d 807, 811 (Colo.App.2000). In deciding whether a meaningful retrospective competency determination is possible, the "court should consider: (1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) [the] defendant's statements in the trial record, and (4) the availability of individuals and witnesses who interacted with the defendant" around the time of her plea. *Id.*

### B. Analysis

¶ 12 The record here supports the postconviction court's findings that it had sufficient information to make a retrospective competency determination and that defendant was, in fact, competent when she entered her guilty plea.

¶ 13 Significant medical evidence, including the results of three contemporaneous competency evaluations, was available to the postconviction court. The first, prepared by Dr. Diamond, concluded she was legally competent; the second, prepared by Dr. Gray and Dr. Shultz, agreed; the third, prepared by Dr. Fukutaki, concluded that defendant's seizure disorder would render her incompetent unless it was controlled. The court considered the results of all three evaluations, as well as testimony by two of the psychologists who prepared them. It found the evaluations concluding defendant was competent more persuasive than the one that did not. Because the postconviction court is in the best position to determine the credibility of witnesses and the weight to give their testimony, we defer to its finding. *Karpierz,* 165 P.3d at 755.

¶ 14 The postconviction court reviewed transcripts of the plea and sentencing hearings, which contained defendant's statements to the trial court. Defendant's responses to the trial court's questions at the plea hearing also suggest that she understood the nature

---

**3.** Although defendant's written motion for post-conviction relief suggested she wanted the court to retrospectively determine whether she was competent when she entered her guilty plea, her attorney abandoned this claim at the postconviction hearing by stating "I'm not asking this court to make a finding that [defendant] was incompetent [at the time of her plea]."

of the proceedings and the terms of the plea agreement. At the sentencing hearing, defendant expressed genuine remorse for her actions and articulately described her mental health problems, drug addiction, and other stressors that contributed to them. Defendant's statements indicate that she not only understood the proceedings but was fully capable of participating in her defense. *See People v. Wingfield*, 2014 COA 173, ¶ 32 (a defendant is incompetent if she suffers from a mental disease or defect that renders her incapable of understanding the nature and course of the proceedings against her or of participating or assisting in her defense or cooperating with defense counsel). The record shows that the trial court found defendant to be competent before her sentence was announced.

¶ 15 The attorney who represented defendant when she entered the plea testified at the postconviction hearing. He explained that while he was initially concerned about defendant's competency, they had several conversations around the time of her plea that convinced him she was competent. The postconviction court found his testimony credible. Although defendant claims the court placed too much weight on plea counsel's testimony, an attorney's "first-hand evaluation of a defendant's ability to consult on his case and to understand the charges and proceedings against him may be as valuable as an expert psychiatric opinion on his competency." *Blehm v. People*, 817 P.2d 988, 994 (Colo.1991). For this reason, courts "must rely to a great extent on defense counsel's evaluation of the defendant's competency." *Id.*

¶ 16 In addition, based on the record, Dr. Fukutaki's concerns, which we accept as well-founded, did not necessarily indicate that defendant was incompetent at the time of the plea. Indeed, the trial court's written findings from the plea hearing state that "[d]efendant is competent at this time."[4]

¶ 17 Because the postconviction court had sufficient contemporaneous information to evaluate defendant's competency at the time of her plea, the fact that it did so five years later does not invalidate its findings. *See Corichi*, 18 P.3d at 811 ("[A] mere lapse of time between trial and a competency hearing does not invalidate the findings made as a result of that hearing."); *see also Maynard v. Boone*, 468 F.3d 665, 675 (10th Cir.2006) (upholding a retrospective competency determination eight years after trial); *Clayton v. Gibson*, 199 F.3d 1162, 1169 (10th Cir.1999) (finding no due process violation when the defendant's competency was determined six years after trial and stating "the passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available").

¶ 18 In sum, the nature of defendant's postconviction claims made it necessary for the postconviction court to evaluate defendant's competency at the time of her plea, the court had enough information to make a retrospective competency determination, and the record supports its finding that defendant was competent.

## IV. Knowing, Voluntary, and Intelligent Plea

¶ 19 The People claim defendant failed to preserve this issue for appellate review. However, defendant argued in her initial postconviction motion that "[a]s Ms. Pendleton was [i]ncompetent, any putative waiver of her [c]onstitutional rights, including ... waiver of all rights associated with the plea agreement, were not knowing, intelligent or voluntary." She reiterated the claim, albeit briefly, at the hearing. Moreover, the prosecution addressed the issue in its written response and the postconviction court subsequently ruled on the claim.

¶ 20 We reject defendant's argument that her guilty plea was not knowing, voluntary, and intelligent. At least in the postconviction court, this claim appears to have been based exclusively on defendant's contention that she was incompetent when she entered the plea. Because the record supports the

---

4. We note that these findings appear on a preprinted form that the trial court presumably signed at the conclusion of the plea hearing. It is unclear from the record whether the postconviction court considered these findings in making its competency determination, but they were contained in the court file and thus available for review.

postconviction court's finding that defendant was competent, it properly denied her request for postconviction relief on this ground. *See Karpierz*, 165 P.3d at 759.

## V. Ineffective Assistance of Counsel

¶ 21 Defendant argues that the postconviction court erred when it denied her motion for postconviction relief on grounds that her plea counsel was ineffective. We disagree.

### A. Relevant Law

¶ 22 To prevail on a claim of ineffective assistance, a defendant must show that (1) her attorney's performance was deficient and (2) she suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ardolino v. People*, 69 P.3d 73, 76 (Colo.2003).

¶ 23 An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Ardolino*, 69 P.3d at 76. Prejudice results if there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.[5] In the plea context, this means showing there is a reasonable probability that, but for the errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

¶ 24 Because a defendant must show both deficient performance and prejudice, her fail-

ure to show either defeats the claim. *Strickland*, 466 U.S. at 700, 104 S.Ct. 2052.

### B. Analysis

¶ 25 Defendant claims plea counsel was ineffective because he (1) abandoned her right to a competency hearing; (2) abandoned an insanity defense; (3) failed to investigate whether her child died in utero; (4) failed to investigate a traumatic brain injury defense; (5) did not adequately advise her of the nature and consequences of her plea; (6) failed to present mitigating evidence at the sentencing hearing;[6] and (7) failed to consult with defendant about an appeal. We conclude the postconviction court did not err in rejecting these claims.

#### 1. Failure to Pursue Competency Determination

■ ¶ 26 Even if plea counsel should have pursued a competency hearing before defendant entered her plea, defendant failed to prove prejudice. The postconviction court found that defendant was competent at the time of her plea and there is no evidence that a pre-plea competency hearing would have had a different result. *See Karpierz*, 165 P.3d at 759.

#### 2. Abandoning Insanity Defense

■ ¶ 27 Even if we assume plea counsel did, in fact, recommend that defendant abandon an insanity defense in favor of accepting the plea offer,[7] defendant failed to show this

---

5. Although our supreme court suggested otherwise in *People v. Naranjo*, 840 P.2d 319, 325 (Colo.1992), more recent cases have clarified that a defendant need not prove prejudice by a preponderance of the evidence. *People v. Washington*, 2014 COA 41, ¶ 23, 345 P.3d 950; *see Hagos v. People*, 2012 CO 63, ¶ 17, 288 P.3d 116 (A defendant is not required "to show that the deficient performance more likely than not altered the outcome of the case."); *see also Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").

6. Defendant also claims plea counsel was ineffective because he failed to object to "certain

statements" by the prosecutor at the sentencing hearing. We do not address this claim because defendant did not identify the statements she believes were objectionable.

7. It is not clear from the record that plea counsel made such a recommendation. There is no support, however, for defendant's suggestion that it was plea counsel who decided to abandon an insanity defense. Plea counsel's uncontested testimony was that it was not his practice to make decisions for his clients, but to explain their options so they could make decisions themselves. He testified that, in this case, he would not have told defendant to accept the plea agreement. Rather, he may have offered his opinion as to whether he thought it "was a better course, but ultimately the decision would [have been] hers."

was unreasonable. As plea counsel testified, this defense was not a "slam dunk."

¶ 28 Although two psychiatrists opined that defendant was unable to act knowingly at the time of the offense, they expressed no opinion on defendant's ability to act recklessly. Thus, a jury could believe the psychiatrists and still convict defendant of child abuse resulting in death.[8] Likewise, if the jury attributed defendant's mental condition to cocaine use—which defendant admitted—the insanity defense would not apply. *See* § 16–8–101.5(2)(b), C.R.S.2015.

¶ 29 Another possibility is the jury would reject defendant's insanity defense altogether. Substantial evidence showed that defendant committed the acts not because of any mental disease or defect, but because she did not want her baby. For example, defendant hid her pregnancy from her family and friends, she did not obtain prenatal care, she used cocaine while she was pregnant, she placed her baby in a bag before hiding him in the trash, she cleaned the bathroom when she was finished, and she later went to a club with friends.

¶ 30 We agree with the postconviction court that advising defendant to abandon her insanity defense in favor of the plea offer would not fall outside the wide range of reasonable professional assistance.

¶ 31 Moreover, defendant failed to establish that, but for plea counsel's recommendation, she would have rejected the plea offer and insisted on going to trial. Plea counsel testified that he discussed the plea offer with defendant because she was tired of the case and wanted to resolve it. The only suggestion that defendant would have preferred to go to trial comes from postconviction and appellate counsel, whose arguments are not evidence. *See People v. Castillo*, 2014 COA 140M, ¶ 64, —— P.3d ——.

### 3. Failure to Investigate Whether the Child Died In Utero

¶ 32 The record supports the postconviction court's conclusion that plea coun-

sel's lack of investigation into whether the child died in utero was reasonable.

¶ 33 A defendant is entitled to pretrial investigation sufficient to reveal potential defenses and facts relevant to guilt or penalty. *Davis v. People*, 871 P.2d 769, 773 (Colo.1994). However, an attorney's decision not to pursue certain avenues of investigation and instead rely on other sources of information, if made in the exercise of reasonable professional judgment, does not amount to ineffective assistance. *See id.*

¶ 34 Here, plea counsel testified that he did not investigate whether the child died in utero because the pathologist who performed the autopsy—who had a reputation for being objective—concluded he was born alive. Although defendant's legal expert criticized plea counsel's failure to investigate the issue further, the court placed little faith in his opinion because he evaluated counsel's performance under the wrong legal standard. And while defendant presented testimony suggesting it was possible that her child had died in utero, the mere possibility that additional investigation would have revealed useful information does not establish ineffective assistance. *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo.App.1994) (unless additional investigation would have revealed "substantial evidence which, if introduced, might reasonably have led to a different result," the failure to conduct such investigation is not prejudicial).

### 4. Failure to Investigate Traumatic Brain Injury Defense

¶ 35 We reject defendant's claim that plea counsel failed to adequately investigate a traumatic brain injury defense for the same reason. The postconviction court found, and we agree, that defendant presented nothing more than speculation about what such an investigation might have revealed. *See id.* Not a single expert discussed traumatic brain injury as an etiological basis for defendant's mental health problems.

---

**8.** As charged in the complaint, the culpable mental state for first degree murder is "knowingly," § 18–3–102(1)(f), while the culpable mental state for child abuse resulting in death is "knowingly or recklessly," §§ 18–6–401(1)(a), (7)(a)(I).

### 5. Inadequate Advisement

¶ 36 Defendant's claim that plea counsel failed to sufficiently advise her of the nature and consequences of her plea because he did not pursue a pre-plea competency determination is not persuasive because, as explained above, the postconviction court properly determined that she was competent. *See Karpierz*, 165 P.3d at 759.

### 6. Failure to Present Mitigating Evidence

 ¶ 37 The record supports the postconviction court's finding that plea counsel argued effectively on defendant's behalf at the sentencing hearing. At the hearing, defendant read a statement, which plea counsel had encouraged her to prepare, expressing remorse and describing her mental health problems, drug addiction, and other factors that had contributed to her actions. Plea counsel's argument complemented defendant's statement by focusing on the same issues and highlighting evidentiary support for her claims. This was a sound strategy. *See Harrington v. Richter*, 562 U.S. 86, 106, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ("There are ... countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). Defendant has failed to overcome the strong presumption that plea counsel's sentencing argument fell within the wide range of reasonable professional assistance. *See Ardolino*, 69 P.3d at 76.

### 7. Failure to Discuss Appeal

 ¶ 38 We reject defendant's claim that plea counsel was ineffective because he failed to discuss with her the possibility of an appeal. An attorney must consult with his client about an appeal when he has reason to think that either (1) a rational defendant would want to appeal or (2) this particular defendant reasonably demonstrated that she was interested in appealing. *Roe v. Flores–Ortega*, 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). "[T]o show prejudice in these circumstances, a defendant must dem-

onstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S.Ct. 1029.

¶ 39 Defendant complains that plea counsel failed to discuss with her the possibility of appealing either her sentence or the trial court's failure to make a competency determination prior to her plea. Although the postconviction court found that defendant's dissatisfaction with her sentence should have alerted counsel that she wished to appeal the sentence, it correctly held that such an appeal was barred by section 18–1–409(1), C.R.S.2015. *See People v. Scofield*, 74 P.3d 385, 387 (Colo.App.2002). Moreover, plea counsel addressed defendant's dissatisfaction with her sentence by filing a motion to reconsider under Crim. P. 35(b). As for the trial court's failure to make a pre-plea competency determination, the postconviction court found that defendant had never expressed an interest in appealing the issue. Additionally, defendant initialed and signed an advisement form stating that she understood that, by pleading guilty, she was giving up the right to appeal her conviction.

¶ 40 Finally, we found no evidence in the record supporting appellate counsel's claim that defendant would have appealed these issues if plea counsel had consulted with her. *See Roe*, 528 U.S. at 484, 120 S.Ct. 1029.

### VI. Conclusion

¶ 41 The order is affirmed.

JUDGE ROMÁN and JUDGE PLANK* concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2015.